James L. Ahlstrom (8704)
 jahlstrom@parrbrown.com
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah 84111

Jonathan K. Hansen (12349)
 jhansen@hbaalaw.com
Joshua C. Horrocks (14680)
 jhorrocks@hbaalaw.com
HANSEN BLACK ANDERSON ASHCRAFT PLLC
3051 West Maple Loop Drive, Suite 325
Lehi, Utah 84043
Telephone:  (801) 922-5000
Facsimile: (801) 922-5019

*Attorneys for Plaintiff Typenex Co-Investment, LLC*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TYPENEX CO-INVESTMENT, LLC, a Utah Limited Liability Company,<br><br>    Plaintiff,<br><br>v.<br><br>UBIQUITY, INC., a Nevada Corporation, and CHRISTOPHER CARMICHAEL, an individual,<br><br>    Defendants. | **COMPLAINT**<br><br>Case No.  2:15-CV-00577<br><br>Magistrate Judge: Brooke C. Wells |

Plaintiff Typenex Co-Investment, LLC ("Typenex"), through its attorneys of record, hereby complains against Defendants Ubiquity, Inc. ("UBIQ") and Christopher Carmichael, and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. Typenex is a limited liability company organized and existing under the laws of the State of Utah, with its principal place of business at 303 East Wacker Drive, Ste. 1040, Chicago, Illinois 60601.

2. UBIQ is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business at 9801 Research Drive, Irvine, California 92618.

3. Christopher Carmichael ("Carmichael") is an individual residing in the state of California.

4. This Court has diversity jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.00.

5. This Court has personal jurisdiction over Defendants UBIQ and Carmichael based on their continuous and systematic contacts with the State of Utah, through their regular transaction of business in this judicial district. The exercise of personal jurisdiction is fair and reasonable given the facts and circumstances of this case in that the Defendants have purposefully availed themselves of the laws of the State of Utah with respect to the claims asserted herein.

6. In addition, in a Securities Purchase Agreement dated January 26, 2015, the parties expressly agreed to waive any trial by jury and to submit to the exclusive personal jurisdiction of any state or federal court sitting in Salt Lake County, Utah.

7. Venue is proper in this district under 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

**January 26, 2015 Investment**

8. On January 26, 2015, Typenex and UBIQ entered into a Securities Purchase Agreement (the "Purchase Agreement") and a Secured Convertible Promissory Note (the "Note")

2

as well as several other documents in connection with the transaction, including Investor Notes, a Security Agreement, and other certificates, documents, resolutions, instruments, and agreements (all collectively referred to herein as the "Transaction Documents").

9. Under the Purchase Agreement, Typenex agreed to deliver to UBIQ the initial cash purchase price of $250,000 and issue three Investor Notes in favor of UBIQ, each in the original principal amount of $100,000 (the initial cash purchase price, together with the Secured Buyer Notes, the "Purchase Price"), in exchange for the Note.

10. UBIQ accepted the Purchase Price and delivered the executed Note to Typenex in the original principal amount of $610,000.

11. The Note is due December 26, 2015 (the "Maturity Date").

12. In Section 8 of the Purchase Agreement, a Variable Security Issuance is defined as any transaction pursuant to Section 3(a)(9) or Section 3(a)(10) of the 1933 Act, equity line of credit or financing agreement arrangement or other transaction that involves issuing [UBIQ] securities that are convertible into common stock (including without limitation selling convertible debt, warrants, or convertible preferred stock) with a conversion price that varies with the market price of the common stock.

13. Also in Section 8, UBIQ agreed that as additional consideration and as a material inducement to Typenex entering the transaction, if UBIQ makes three Variable Security Issuances to three separate individuals or entities, then UBIQ must obtain Typenex's written consent for any other Variable Security Issuance until the Note is paid in full.

14. In Section 4(i) of the Purchase Agreement, UBIQ agreed to timely make all filings required to be made under the 1933 Act, the 1934 Act, Rule 144 or any United States securities laws and regulations thereof applicable to UBIQ.

15. In Section 9.1 of the Purchase Agreement, UBIQ agreed to deliver its original signature pages to the Transaction Documents to Typenex within five trading days of January 26, 2015.

16. Also, in Section 8 of the Note, UBIQ agreed to make monthly installment payments to Typenex beginning on July 26, 2015.

17. Per Section 8 of the Note, UBIQ could pay each Installment Amount:

   a. In cash;
   
   b. By converting such installment amount into shares of Common Stock by applying a formula outlined in Section 8.2 of the Note; or
   
   c. By any combination of cash and Common Stock.

18. Section 8.3 of the Note requires UBIQ to notify Typenex whether UBIQ elects to make each installment payment in cash, Common Stock or a combination of the two.

19. If UBIQ fails to send an installment notice to Typenex within 15 trading days of the applicable installment date, then Typenex can prepare an installment notice itself.

20. If UBIQ does not ratify or modify the installment notice prepared by Typenex before the applicable installment date, then UBIQ is deemed to accept the installment notice Typenex prepares, including the method of payment.

21. If neither UBIQ nor Typenex deliver an installment notice, then UBIQ is deemed to have elected to pay the applicable installment by converting shares of common stock.

22. Under Section 4.1(i) of the Note, an event of default occurs if UBIQ fails to pay any principal when due and payable.

23. Under Section 4.1(ix) of the Note, an event of default occurs if UBIQ fails to observe or perform any covenant, obligation, condition, or agreement contained in the Note or any of the Transaction Documents.

24. Under Section 4.1(x) of the Note, an event of default occurs if UBIQ becomes delinquent in its filing requirements as a fully-reporting issuer registered with the SEC of if UBIQ fails to timely file all required quarterly and annual reports.

25. Under Section 4.2 of the Note, at any time following the occurrence of any event of default, and upon written notice from Typenex to UBIQ, Typenex may increase the interest rate to 22% (the "Default Rate").

26. Additionally, under Section 4.2 of the Note, upon the occurrence of any event of default, Typenex may elect to increase the outstanding balance (without accelerating the Note) by multiplying the conversion eligible outstanding balance by (i) 15% for any occurrence of a major default, or (ii) 5% for any occurrence of a minor default, and then adding the resulting product to the outstanding balance of the Note (the "Default Effect").

27. Section 4.2 of the Note provides that Typenex may apply the Default Effect with respect to three major defaults and three minor defaults.

28. Section 6 of the Investor Notes provides that upon the occurrence of any event of default under the Note, Typenex is entitled to deduct and offset any amount Typenex owes under the Investor Notes from the outstanding balance of the Note.

**UBIQ Commits Several Breaches Under the Transaction Documents**

29. Following the execution of the Transaction Documents, UBIQ was required to deliver to Typenex the original signature pages by February 2, 2015.

30. UBIQ failed to deliver the original signature pages by that date and has yet to deliver the original signature pages.

31. Also, in violation of Section 4(i) of the Purchase Agreement and Section 4.1(x) of the Note, UBIQ failed to timely file its Form 10-Q for the period ending March 31, 2015.

32. Further, in violation of Section 8 of the Purchase Agreement, UBIQ made 18 unauthorized Variable Security Issuances within 90 days from the date the parties entered the Transaction Documents.

33. Five of the Variable Security Issuances were made within three weeks of the parties entering the Transaction Documents, with one issuance being made the day after the parties entered the Transaction Documents.

34. Pursuant to the Purchase Agreement, UBIQ needed Typenex's consent for 15 of those Variable Security Issuances, which consent Typenex never provided.

35. On January 27, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with Adar in the principal amount of $52,500.

36. On February 4, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with JMJ in the principal amount of $300,000.

37. On February 6, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with Auctus in the principal amount of $105,000.

38. On February 12, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with JDF Capital in the principal amount of $200,000 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement.

39. On February 13, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with Tangiers in the principal amount of $100,000 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement.

40. On February 18, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with JSJ in the principal amount of $127,000 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement.

41. On March 5, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with Blue Citi, LLC in the principal amount of $137,500 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement.

42. On March 18, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with FireRock in the principal amount of $127,500 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement.

43. On March 24, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with R-Squared in the principal amount of $127,500 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement.

44. On March 30, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with Union Capital in the principal amount of $50,000 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement.

45. On April 2, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with Adar in the principal amount of $52,500 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement.

46. On April 3, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with Cardinal in the principal amount of $100,000 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement.

47. On April 3, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with Vista in the principal amount of $110,000 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement.

48. On April 13, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with JDF Capital in the principal amount of $200,000 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement.

49. On April 17, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with Auctus in the principal amount of $75,000 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement.

50. On April 21, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with LG in the principal amount of $109,200 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement.

51. On April 21, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with Anson in the principal amount of $250,000 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement.

52. On April 28, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with JMJ in the principal amount of $300,000 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement.

53. On July 26, 2015, UBIQ was obligated to pay Typenex the applicable installment amount plus any accrued and unpaid interest (the "July Payment").

54. UBIQ did not send an installment notice to Typenex for the July Payment and therefore is deemed to have elected to make the July Payment in Common Stock.

55. UBIQ failed to make the July Payment in Common Stock by the installment date and, as of today's date, has still not made the July Payment.

56. UBIQ's failure to make the July Payment is an event of default under Section 4.1(i) of the Note.

57. Typenex sent UBIQ a letter dated August 3, 2015 outlining the various defaults and acts constituting both breaches of the Transaction Documents and fraud.

58. The August 3, 2015 letter notified UBIQ of the application of the Default Effect applied with respect to the major and minor defaults under the Transaction Documents.

59. The letter also notified UBIQ of the accrual of interest at the rate of 22% from February 2, 2015 when the first event of default occurred.

60. Finally, the letter notified UBIQ of Typenex's election to offset the three Investor Notes totaling $342,493.15 from the then outstanding balance of $826,584.71, bringing the total outstanding balance as of that date to $484,091.56.

61. With the lapse of additional time since the August 3, 2015 letter, the current outstanding balance of the Note is $486,463.30.

**FIRST CAUSE OF ACTION**
(Breach of Contract)

62. Typenex incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

63. The Purchase Agreement, Note, and other Transaction Documents constitute valid and binding contracts between Typenex and UBIQ.

9

64. Typenex fully performed under all the Transaction Documents, including the Purchase Agreement and Note, by among other things, paying UBIQ the Purchase Price required under the Transaction Documents.

65. UBIQ materially breached the Transaction Documents by, among other things:

    a. failing to timely file its Form 10-Q for the period ending March 31, 2015;

    b. failing to make the July Payment by the applicable installment date; and

    c. entering into agreements constituting Variable Security Issuances with at least 15 individuals or entities without first obtaining Typenex's consent.

66. As a direct and proximate result of UBIQ's breach of the Transaction Documents, Typenex has been damaged in an amount to be proven at trial, but which amount is not less than $486,760.58.

67. Typenex is entitled to judgment against UBIQ as set forth herein.

## SECOND CAUSE OF ACTION
(Breach of the Implied Covenant of Good Faith and Fair Dealing)

68. Typenex incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

69. As a matter of law, an implied covenant of good faith and fair dealing inheres in the Transaction Documents, and requires UBIQ to not act in a way that denies Typenex the benefit of its bargain.

70. The actions outlined in Paragraph 65 show that UBIQ intentionally acted in a manner that breached the Transaction Documents and denied Typenex the benefit of its bargain.

71. Indeed, one of the primary breaches of this implied covenant can be seen in the form of UBIQ's 18 Variable Security Issuances following its entering the Transaction Documents.

72. As a direct and proximate result of UBIQ's breach of the implied covenant of good faith and fair dealing, Typenex has been damaged in an amount to be proven at trial, which amount is believed to be not less than $486,760.58.

73. Typenex is entitled to judgment against UBIQ as set forth herein.

### THIRD CAUSE OF ACTION
(Unjust Enrichment)

74. Typenex incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

75. Typenex conferred benefits on UBIQ by, among other things, providing UBIQ with $250,000 in cash and three $100,000 Investor Notes in connection with the January 26, 2015 loan.

76. Typenex provided these benefits with the expectation that it would be compensated in accordance with the terms set forth in the Transaction Documents, and Typenex was precluded from using its funds to provide similar benefits to other interested parties in reliance on such expectations.

77. Typenex's expectation was reasonable under the circumstances.

78. UBIQ was fully aware of the benefits Typenex conferred upon UBIQ.

79. UBIQ accepted and retained the benefits Typenex conferred upon it.

80. To permit UBIQ to retain the benefits Typenex provided without fully compensating Typenex would inequitably favor UBIQ at Typenex's expense.

81. Typenex is entitled to judgment against UBIQ as set forth herein.

### FOURTH CAUSE OF ACTION
(Declaratory Judgment)

82. Typenex incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

83. UBIQ has failed to comply with the Transaction Documents by failing to, among other things: (i) deliver the original signature pages to Typenex; (ii) file the required Form 10-Q for the period ending March 31, 2015; (iii) make the July Payment; and (iv) obtain Typenex's consent with respect to Variable Security Issuances.

84. Typenex's interests in the Transaction Documents constitute legally protected interests.

85. The conflict between UBIQ, on one hand, and Typenex, on the other hand, is ripe for a judicial resolution and involves the rights, status, and legal relations of the parties involved in this lawsuit.

86. Under Utah Code Ann. § 78B-6-401, Typenex is entitled to declaratory relief declaring that: (a) the Transaction Documents are enforceable agreements; (b) UBIQ is obligated to honor the Transaction Documents; and (c) UBIQ's failures to honor the Transaction Documents are breaches of its obligations under the Agreement and Note that entitle Typenex to a ruling, judgement, and order declaring, *inter alia*, that UBIQ owes at least $486,760.58 under such documents as a result of its breaches of the same.

87. Typenex is entitled to judgment against UBIQ as set forth herein.

**FIFTH CAUSE OF ACTION**
(Temporary and Preliminary Injunctive Relief)

88. Typenex incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

89. Because of UBIQ's numerous breaches of the Transaction Documents, Typenex has suffered substantial injury, which injury continues to compound.

90. Under law, UBIQ, Carmichael, and those acting in concert with them, should be restrained from continuing further unlawful acts in violation of the Transaction Documents.

91. Among other things, because UBIQ and Carmichael have continuously breached the Transaction Documents, there is a substantial and actual threat that Typenex has and will continue to sustain immediate and irreparable injury and damages.

92. Typenex has suffered, is presently suffering, and will continue to suffer immediate and irreparable injury as a result of UBIQ and Carmichael's unlawful conduct including their continued breaches of the Transaction Documents and desire to enter into another Variable Security Issuance while continuing to miss installment payments.

93. The threat of injury to Typenex outweighs any damage that injunctive relief may cause to UBIQ or Carmichael.

94. There is a substantial likelihood that Typenex will prevail on the merits of its breach of contract, breach of covenant of good faith and fair dealing, and its other underlying claims, and this case presents serious and substantial issues on the merits which should be subject to further determination and investigation.

95. The Transaction Documents do not limit Typenex from obtaining injunctive relief.

96. UBIQ and Carmichael should therefore be restrained from entering any other agreement constituting a Variable Security Issuance.

97. UBIQ should also be restrained from issuing any stock or payments in connection with any of the 15 Variable Security Issuances that resulted in UBIQ breaching the Purchase Agreement.

## SIXTH CAUSE OF ACTION
(Promissory Estoppel)

98.     Typenex incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

99.     Typenex acted with prudence and in reasonable reliance on UBIQ's promises, representations, warranties, and covenants to pay all applicable installments; to stay current on its required filings; and to obtain Typenex's consent with respect to Variable Security Issuances.

100.    UBIQ knew that Typenex relied on UBIQ's promises, which UBIQ should reasonably expect to induce Typenex's action or forbearance.

101.    UBIQ was aware of all material facts surrounding Typenex's payment of the Purchase Price, Typenex's reliance on UBIQ's promises, and Typenex's actions induced by UBIQ's promises.

102.    Typenex reasonably relied on UBIQ's promises and the reliance resulted in a loss to Typenex.

103.    Typenex is entitled to judgment against UBIQ as set forth herein in an amount not less than $486,760.58.

## SEVENTH CAUSE OF ACTION
(Fraud)

104.    Typenex incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

105.    UBIQ and Carmichael made false representations to Typenex that UBIQ would pay all applicable installments by the applicable installment date; timely file all required filings; and obtain Typenex's consent with respect to Variable Security Issuances.

106. These written representations are manifest in the Purchase Agreement, Note, and other Transaction Documents.

107. UBIQ and Carmichael knew these representations to be false at the time they made them, in part because UBIQ and Carmichael were already in negotiations with other lenders who would enter agreements constituting Variable Security Issuances.

108. Typenex learned these representations to be false after Typenex had entered the Transaction Documents with UBIQ, delivered the Purchase Price to UBIQ, and after the 18 Variable Security Issuances had been made.

109. Each of the representations described were expressly noted as a material inducement to Typenex entering into the Transaction Documents, and UBIQ and Carmichael had a duty to inform Typenex with regard to each of these misrepresentations for at least the following reasons:

    a. The disclosure of these representations was necessary in order to prevent the affirmative, written representations made with respect to the investment from being misleading.

    b. The subject matter of the representations were expressly outlined in the Transaction Documents, reviewed by legal counsel, and known to UBIQ and Carmichael.

    c. UBIQ and Carmichael actively and intentionally concealed and omitted facts from Typenex with respect to future Variable Security Issuances.

110. Each of UBIQ and Carmichael's misrepresentations concerned a then existing material fact as evidenced by the express statements in the Transaction Documents that such statements were a material inducement for Typenex entering the Transaction Documents.

111. All these material representations were false. UBIQ and Carmichael knew each of these representations was false.

112. Each of these misrepresentations was made for the purpose of inducing Typenex to rely on the misrepresentation.

113. In the alternative, UBIQ and Carmichael should have known that the representations made to Typenex were false, and UBIQ and Carmichael were careless or negligent in acquiring or communicating information to Typenex.

114. UBIQ and Carmichael had a pecuniary interest in all of the affairs at issue herein, and had superior knowledge of the subject matter of the misrepresentations made to Typenex.

115. UBIQ and Carmichael expected Typenex to rely on their misrepresentations.

116. In fact, Typenex did rely on UBIQ and Carmichael's representations, and suffered damages as a result of the misrepresentations.

117. Typenex was ignorant of the falsity of each of the express misrepresentations, and reasonably relied on these express misrepresentations.

118. As a direct, proximate, and foreseeable result of Typenex's reasonable reliance on the misrepresentations, Typenex was damaged in an amount to be determined at trial.

119. Typenex is entitled to judgment against UBIQ as set forth herein.

## EIGHTH CAUSE OF ACTION
(Negligent Misrepresentation)

120. Typenex incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

121. UBIQ carelessly, or negligently, made false representations to Typenex that UBIQ would pay all applicable installments by the applicable installment date; timely file all required filings; and obtain Typenex's consent with respect to Variable Security Issuances.

122. Typenex reasonably relied on these representations and acted on the same by delivering the Purchase Price to UBIQ.

123. UBIQ ignored its representations that it would pay all applicable installments by the applicable installment date; timely file all required filings; and obtain Typenex's consent with respect to Variable Security Issuances.

124. Through multiple breaches, especially those so close to the time the parties entered the Transaction Documents, UBIQ demonstrated the falsity and carelessness in the representations it made to Typenex.

125. As a result, Typenex suffered a loss in the transaction.

126. Typenex is entitled to judgment against UBIQ as set forth herein.

## NINTH CAUSE OF ACTION
(Civil Conspiracy)

127. Typenex incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

128. UBIQ and Carmichael knowingly joined and agreed to conspire to induce Typenex to enter the Transaction Documents.

129. UBIQ and Carmichael combined to make the misrepresentations described in this Complaint.

130. Each of the misrepresentations described herein and the subsequent transaction were overt acts undertaken in furtherance of UBIQ and Carmichael's conspiracy.

131. As a direct result, Typenex has been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Typenex prays for judgment against UBIQ as follows:

A. For damages associated with each of the claims for relief in amounts to be proven, including any unpaid fees as authorized by statute or contract, in an amount not less than $486,760.58.

B. For declaratory relief under the Transaction Documents.

C. For specific performance by UBIQ of all obligations owed and injunctive relief ordering performance of the same.

D. For injunctive relief prohibiting UBIQ, Carmichael, and their affiliates from entering into any other Variable Security Issuances, or from issuing any stock or other payments to those individuals or entities who are part of the Variable Security Issuances constituting breaches under the Purchase Agreement.

E. For an award of all costs, and reasonable attorneys' fees incurred by Typenex.

F. For such other and further relief as is deemed just and equitable under the circumstances.

SIGNED and DATED: August 13, 2015

PARR BROWN GEE & LOVELESS, P.C.

 /s/ James L. Ahlstrom
James L. Ahlstrom
*Attorneys for Plaintiff*

4816-8506-4486, v. 1