James L. Ahlstrom (8704)
 jahlstrom@parrbrown.com
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840

Jonathan K. Hansen (12349)
 jhansen@hbaalaw.com
Joshua C. Horrocks (14680)
 jhorrocks@hbaalaw.com
HANSEN BLACK ANDERSON ASHCRAFT PLLC
3051 West Maple Loop Drive, Suite 325
Lehi, Utah 84043
Telephone:  (801) 922-5000
Facsimile: (801) 922-5019


*Attorneys for Plaintiff Typenex Co-Investment, LLC*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TYPENEX CO-INVESTMENT, LLC, a Utah Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>UBIQUITY, INC., a Nevada Corporation, and CHRISTOPHER CARMICHAEL, an individual<br><br>Defendants. | **MOTION FOR TEMPORARY RESTRAINING ORDER AND SUPPORTING MEMORANDUM**<br><br><br>Case No. 2:15-cv-00577<br><br>Judge Brooke C. Wells |

Plaintiff Typenex Co-Investment, LLC ("Typenex"), through its attorneys of record,

hereby submits this Motion for Temporary Restraining Order and Supporting Memorandum.

## RELIEF SOUGHT AND GROUNDS FOR MOTION

Under Fed. R. Civ. P. 65, Typenex hereby moves the Court for a temporary restraining order and preliminary injunction enjoining Defendants Ubiquity, Inc. ("UBIQ") and Christopher Carmichael ("Carmichael") – and their respective officers, agents, servants, employees, attorneys, and others acting in concert with them – from taking any action that would constitute a variable security issuance under the parties' contracts, or any action to issue stock or otherwise make a payment in connection with the variable security issuances already completed that would result in a breach of the parties' contracts. Typenex brings this motion based on the following grounds:

1.     UBIQ and Carmichael have already agreed to at least 15 variable security issuances that violate the Securities Purchase Agreement the parties entered into on January 26, 2015.

2.     Unless restrained by court order, UBIQ and Carmichael could take further action in relation to these 15 variable security issuances by issuing stock or otherwise making payments to those individuals or entities taking part in those transactions.

3.     Despite Typenex notifying UBIQ and Carmichael of several breaches, including the excessive variable security issuances, UBIQ and Carmichael are currently negotiating yet another variable security issuance, which will cause substantial injury and harm to Typenex.

4.     UBIQ and Carmichael's actions have already caused, and unless enjoined, will continue to cause serious irreparable harm to Typenex, by among other things, preventing Typenex from enjoying the fruits of its contracts and diluting any stock Typenex owns in UBIQ while destroying the liquidity of Typenex's investment and return.

5.      Conversely, any harm UBIQ or Carmichael may claim from the requested injunction would not outweigh the irreparable harm Typenex will suffer.

6.      Granting Typenex's request for an injunction and restraining order will further the public interest by (a) preventing UBIQ from committing further breaches of its contracts, and (b) protecting the interest and property held by Typenex and others.

7.      Typenex has a substantial likelihood of success on the merits. UBIQ and Carmichael expressly agreed that after making three variable security issuances, UBIQ would obtain Typenex's consent for any other agreement constituting a variable security interest. Following execution of the contracts, UBIQ and Carmichael made five variable security issuances within the first three weeks and 18 in the first 90 days. UBIQ and Carmichael did not obtain Typenex's consent for any of the 15 variable security issuances occurring after UBIQ made the first three. Further, UBIQ was required to make a payment in either stock, cash, or a combination of both by July 26, 2015. No such payment has been made. These facts, as attested to in the attached affidavit of John Fife, demonstrate that Typenex is likely to prevail on all its claims. At least, Typenex can show that this case presents serious issues on the merits that are ripe for adjudication and should be the subject of further litigation.

8.      Typenex has pursued arbitration as the overall means of resolving claims and disputes between the parties, as expressed in the contracts. However, Typenex seeks this Court's order for a temporary restraining order and preliminary injunction to maintain the status quo and prevent further breaches of the contracts through the duration of the arbitration so that meaningful relief can be provided in such arbitration.

## INTRODUCTION

Typenex seeks injunctive relief to prevent UBIQ from further breaching its contractual obligations while the parties proceed to arbitrate their dispute, particularly since the breaches that are occurring amount to dilution of stock in a way that would hamper UBIQ's ability to repay Typenex. Typenex has learned that UBIQ and Carmichael are currently in negotiations to enter an agreement that would further violate UBIQ's contractual obligations to Typenex. Moreover, payments or stock issuances relating to UBIQ's breaches will begin to come due within the next week. If either of these events takes place without injunctive relief while the parties are engaged in arbitration, Typenex will suffer irreparable harm and will be left with an empty victory and arbitration award at the end of arbitration. Accordingly, the requested relief is warranted in this instance, Typenex respectfully requests this Court grant this motion and issue a preliminary injunction and temporary restraining order enjoining UBIQ and Carmichael from (1) entering any other agreement constituting a variable security issuance, and (2) issuing stock or otherwise making payments in connection with variable security issuance already made, which when made were breaches of UBIQ's obligations to Typenex.

## STATEMENT OF FACTS

**January 26, 2015 Investment**

9.      On January 26, 2015, Typenex and UBIQ entered into a Securities Purchase Agreement (the "Purchase Agreement") (attached as *Exhibit 1* to Declaration of John Fife, submitted concurrently herewith; hereafter, "Ex. 1") and a Secured Convertible Promissory Note (the "Note") (attached as *Exhibit 2* to Declaration of John Fife, submitted concurrently herewith; hereafter, "Ex. 2") as well as several other documents in connection with the transaction, including Investor Notes, a Security Agreement, and other certificates, documents, resolutions,

instruments, and agreements (all collectively referred to herein as the "Transaction Documents"). *See* Declaration of John Fife at ¶ 5.

10.     Under the Purchase Agreement, Typenex agreed to deliver to UBIQ the initial cash purchase price of $250,000 and issue three Investor Notes in favor of UBIQ, each in the original principal amount of $100,000 (the initial cash purchase price, together with the Secured Buyer Notes, the "Purchase Price"), in exchange for the Note. *See* Declaration of John Fife at ¶ 6 and *Ex. 1*.

11.     UBIQ accepted the Purchase Price and delivered the executed Note to Typenex in the original principal amount of $610,000. *See* Declaration of John Fife at ¶ 7.

12.     In Section 8 of the Purchase Agreement, a Variable Security Issuance is defined as any transaction pursuant to Section 3(a)(9) or Section 3(a)(10) of the 1933 Act, equity line of credit or financing agreement arrangement or other transaction that involves issuing [UBIQ] securities that are convertible into common stock (including without limitation selling convertible debt, warrants, or convertible preferred stock) with a conversion price that varies with the market price of the common stock.  *See* Declaration of John Fife at ¶ 8 and *Ex. 1*.

13.     Also in Section 8, UBIQ agreed that as additional consideration and as a material inducement to Typenex entering the transaction, if UBIQ makes three Variable Security Issuances to three separate individuals or entities, then UBIQ must obtain Typenex's written consent for any other Variable Security Issuance until the Note is paid in full. *See* Declaration of John Fife at ¶ 9 and *Ex. 1*.

14.   Also, in Section 8 of the Note, UBIQ agreed to make monthly installment payments to Typenex beginning on July 26, 2015.  *See* Declaration of John Fife at ¶ 10 and *Ex. 2*.

15.   Per Section 8 of the Note, UBIQ could pay each Installment Amount:

    a.   In cash;

    b.   By converting such installment amount into shares of Common Stock by applying a formula outlined in Section 8.2 of the Note; or

    c.   By any combination of cash and Common Stock.

*See* Declaration of John Fife at ¶ 11.

16.   Section 8.3 of the Note requires UBIQ to notify Typenex whether UBIQ elects to make each installment payment in cash, Common Stock or a combination of the two. *See* Declaration of John Fife at ¶ 12 and *Ex. 2*.

17.   If UBIQ fails to send an installment notice to Typenex within 15 trading days of the applicable installment date, then Typenex can prepare an installment notice itself.  See Declaration of John Fife at ¶ 13 and *Ex. 2*.

18.   If UBIQ does not ratify or modify the installment notice prepared by Typenex before the applicable installment date, then UBIQ is deemed to accept the installment notice Typenex prepares, including the method of payment.  *See* Declaration of John Fife at ¶ 14 and *Ex. 2*.

19.   If neither UBIQ nor Typenex deliver an installment notice, then UBIQ is deemed to have elected to pay the applicable installment by converting shares of common stock.  *See* Declaration of John Fife and *Ex. 2*.

20.      Under Section 4.1(i) of the Note, an event of default occurs if UBIQ fails to pay any principal when due and payable. See Declaration of John Fife at ¶ 16 and *Ex. 2*.

21.      Under Section 4.1(ix) of the Note, an event of default occurs if UBIQ fails to observe or perform any covenant, obligation, condition, or agreement contained in the Note or any of the Transaction Documents.  *See* Declaration of John Fife at ¶ 17 and *Ex. 2*.

22.      Under Section 4.1(x) of the Note, an event of default occurs if UBIQ becomes delinquent in its filing requirements as a fully-reporting issuer registered with the SEC or if UBIQ fails to timely file all required quarterly and annual reports.  See Declaration of John Fife at ¶ 18 and *Ex. 2*.

**UBIQ Commits Several Breaches Under the Transaction Documents**

23.      In violation of Section 8 of the Purchase Agreement, UBIQ made 18 unauthorized Variable Security Issuances within 90 days from the date the parties entered the Transaction Documents. *See* Declaration of John Fife at ¶ 19.

24.      Five of the Variable Security Issuances were made within three weeks of the parties entering the Transaction Documents, with one issuance being made the day after the parties entered the Transaction Documents. *See* Declaration of John Fife at ¶ 20.

25.      Pursuant to the Purchase Agreement, UBIQ needed Typenex's consent for 15 of those Variable Security Issuances. *See* Declaration of John Fife at ¶ 21.

26.      UBIQ did not seek or obtain Typenex's consent for any of the 15 variable security issuances. *See* Declaration of John Fife at ¶ 22.

27.     On January 27, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with Adar in the principal amount of $52,500. *See* Declaration of John Fife at ¶ 23.

28.     On February 4, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with JMJ in the principal amount of $300,000. *See* Declaration of John Fife at ¶ 24.

29.     On February 6, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with Auctus in the principal amount of $105,000. *See* Declaration of John Fife at ¶ 25.

30.     On February 12, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with JDF Capital in the principal amount of $200,000 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement. *See* Declaration of John Fife at ¶ 26.

31.     On February 13, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with Tangiers in the principal amount of $100,000 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement. *See* Declaration of John Fife at ¶ 27.

32.     On February 18, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with JSJ in the principal amount of $127,000 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement. *See* Declaration of John Fife at ¶ 28.

33.     On March 5, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with Blue Citi, LLC in the principal amount of $137,500 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement. *See* Declaration of John Fife at ¶ 29.

34.     On March 18, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with FireRock in the principal amount of $127,500 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement. *See* Declaration of John Fife at ¶ 30.

35.     On March 24, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with R-Squared in the principal amount of $127,500 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement. *See* Declaration of John Fife at ¶ 31.

36.     On March 30, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with Union Capital in the principal amount of $50,000 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement. *See* Declaration of John Fife at ¶ 32.

37.     On April 2, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with Adar in the principal amount of $52,500 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement. *See* Declaration of John Fife at ¶ 33.

38.     On April 3, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with Cardinal in the principal amount of $100,000 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement. *See* Declaration of John Fife at ¶ 34.

39.     Also on April 3, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with Vista in the principal amount of $110,000 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement. *See* Declaration of John Fife at ¶ 35.

40.     On April 13, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with JDF Capital in the principal amount of $200,000 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement. *See* Declaration of John Fife at ¶ 36.

41.     On April 17, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with Auctus in the principal amount of $75,000 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement. *See* Declaration of John Fife at ¶ 37.

42.     On April 21, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with LG in the principal amount of $109,200 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement. *See* Declaration of John Fife at ¶ 38.

43.     Also on April 21, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with Anson in the principal amount of $250,000 without obtaining Typenex's consent as was required under Section 8 of the Purchase Agreement. *See* Declaration of John Fife at ¶ 39.

44.     On April 28, 2015, UBIQ entered into agreements constituting a Variable Security Issuance with JMJ in the principal amount of $300,000 without obtaining Typenex's

consent as was required under Section 8 of the Purchase Agreement. *See* Declaration of John Fife at ¶ 40.

45.     On July 26, 2015, UBIQ was obligated to pay Typenex the applicable installment amount plus any accrued and unpaid interest (the "July Payment").  *See* Declaration of John Fife at ¶ 41 and *Ex. 2*.

46.     UBIQ did not send an installment notice to Typenex for the July Payment and therefore is deemed to have elected to make the July Payment in Common Stock. *See* Declaration of John Fife at ¶ 42.

47.     UBIQ failed to make the July Payment in Common Stock by the installment date and, as of today's date, has still not made the July Payment. *See* Declaration of John Fife at ¶ 43.

48.     UBIQ's failure to make the July Payment is an event of default under Section 4.1(i) of the Note. *See* Declaration of John Fife at ¶ 44 and *Ex. 2*.

**UBIQ will commit further breaches unless enjoined**

49.     Typenex has received communications from UBIQ that UBIQ is currently in negotiations to enter another agreement that would constitute another unauthorized variable security issuance. *See* Declaration of John Fife at ¶ 45.

50.     Typenex believes that UBIQ will enter into this agreement without Typenex's consent, which agreement would violate the parties' contracts, further dilute Typenex's investment, and significantly drain UBIQ's liquidity. *See* Declaration of John Fife at ¶ 46.

51.     Based on the timing of the previous unauthorized variable security issuances, UBIQ will be required to make payments or issue stock in accordance with the debt owed on

those unauthorized variable security issuances within the next week and the several weeks following. *See* Declaration of John Fife at ¶ 47.

52.     Any such payments or stock issuances will further damage Typenex and dilute Typenex's investment. *See* Declaration of John Fife at ¶ 48.

53.     Typenex has served UBIQ and Carmichael with the arbitration notice and has initiated all required steps to commence arbitration. *See* Declaration of John Fife at ¶ 49.

## ARGUMENT

This Court has the authority to grant a temporary restraining order and preliminary injunction in order to "preserve the status quo pending a final determination of the rights of the parties, [and] in order to preserve the power to render a meaningful decision on the merits." *Resolution Trust Corp. v. Cruce*, 972.F.2d 1195, 1198 (10th Cir. 1992) (citations omitted). To obtain this relief, Typenex must show: (1) a likelihood that it will suffer irreparable harm if the relief is not granted; (2) that the balance of equities is in its favor; (3) that the injunction would not be adverse to the public interest; and (4) a likelihood that it will succeed on the merits of its underlying claims. *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (citations omitted).

Typenex satisfies these elements and is entitled to the requested relief. Accordingly, this Court should enjoin UBIQ and Carmichael as requested in this motion and allow the temporary restraining order and preliminary injunction to stand during the pendency of arbitration.

## I.     Typenex will suffer irreparable harm if UBIQ and Carmichael are not enjoined.

UBIQ and Carmichael will cause irreparable harm to Typenex if not enjoined. Irreparable harm is determined "based on such factors as the difficulty in calculating damages, the loss of a

unique product, and existence of intangible harms such as loss of goodwill or competitive market position." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1264 (10th Cir.2004). This Court has also found irreparable harm existed where there was a "cognizable danger that future violations will occur." *ClearOne Commc'ns, Inc. v. Chiang*, 608 F. Supp. 2d 1270, 1279 (D. Utah 2009) *aff'd in part sub nom ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735 (10th Cir. 2011). Courts "have recognized that the loss of a unique or fleeting business opportunity can constitute irreparable injury." *Salt Lake Tribune Publ'g Co. v. AT & T Corp.*, No. 2:00CV936C, 2001 WL 670928, at *17-18 (D. Utah Feb. 21, 2001) (citing *Starlight Sugar, Inc. v. Soto*, 114 F.3d 330, 332 (1st Cir.1997)).

In this case, injunctive relief is warranted because, without it, UBIQ and Carmichael will commit future violations of the parties' contracts, which in turn will dilute Typenex's investment in a way that will make repayment of the debt owed unlikely.  After entering into the Purchase Agreement in January 2015, UBIQ and Carmichael have violated the obligation to seek Typenex's consent for additional variable security issuances at least 15 times. Typenex has learned that UBIQ and Carmichael are currently negotiating yet another, and even greater, variable security issuance. Furthermore, payments or stock issuances on the 15 unauthorized variable security issuances will begin to come due within the next week.  Allowing payments to be made on such unauthorized variable security issuances, or allowing new such issuances, will drain a limited pool of resources available to meet obligations owed to Typenex.

Additionally, if not enjoined, UBIQ and Carmichael can destroy Typenex's market position and business opportunity with respect to Typenex's investment in UBIQ by making payments, issuing stock, or entering into another agreement constituting a variable security

13

issuance. Taking any of these actions will dilute Typenex's interest, and significantly damage UBIQ's liquidity, which is vital to investors like Typenex. Even if it were possible to calculate these damages, by virtue of these actions taking place, Typenex "would perhaps be left after a trial on the merits with an empty victory." *Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 356 (10th Cir. 1986). In such circumstances, there is ample justification and grounds to find that irreparable harm will occur if the requested injunction and restraining order is not granted.

## II.     The balance of the equities favors Typenex.

When considering the effects of a preliminary injunction or temporary restraining order, it is clear that the equities favor Typenex. Without enjoining UBIQ and Carmichael, Typenex will lose the opportunity to obtain any favorable result because UBIQ will further dilute Typenex's investment, eliminate substantially all liquidity, and Typenex would otherwise be left with an empty victory with no way to enjoy the fruits of its contract. On the other hand, the only prejudice facing UBIQ and Carmichael would be that they would have to postpone their efforts to further breach their contractual obligations to Typenex. Typenex is not seeking anything other than to maintain the status quo and enjoin UBIQ and Carmichael from further breaching their obligations. Therefore, regardless of the degree of Typenex's injury, there is no prejudice that the requested relief would bring upon UBIQ and Carmichael that could outweigh the potential harm Typenex will suffer. In short, all equities favor issuing the injunctive relief sought by Typenex.

## III.    Enjoining UBIQ and Carmichael is not adverse to the public interest.

The public interest favors Typenex's request to enjoin UBIQ and Carmichael from committing further breaches of their contractual obligations. In *Neways Inc. v. Mower*, this Court

found that the public interest favored an injunction that sought "only to prevent the disavowal of existing contractual duties." 543 F. Supp. 2d 1277, 1290 (D. Utah 2008). Contrary to any assertion UBIQ may make, this Court has found that the public has an interest "in the enforcement of contractual duties." *Id. See also ClearOne Commc'ns, Inc. v. Chiang*, 608 F. Supp. 2d 1270, 1281 (D. Utah 2009) *aff'd in part sub nom ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735 (10th Cir. 2011) ("Although the court recognizes the public has a strong interest in a competitive marketplace, the public has an even greater interest in honoring contractual obligations."). Therefore, Typenex's request for an injunction to hold the status quo and prevent UBIQ and Carmichael from further breaching their contracts favors the public interest.

## IV.    Typenex has a likelihood of succeeding on the merits of its underlying claims.

Typenex is required to show "a likelihood that it will succeed on the merits of its underlying claims." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (citations omitted). "When the other three requirements for a preliminary injunction are satisfied, it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." *Otero Sav. & Loan Ass'n v. Fed. Reserve Bank of Kansas City, Mo.*, 665 F.2d 275, 278 (10th Cir. 1981) (internal quotations and citations omitted). Typenex far exceeds this standard with respect to its contract claims asserted in this lawsuit.

UBIQ has entered into 18 agreements constituting variable security issuances since entering into the Purchase Agreement with Typenex. Section 8 of the Purchase Agreement states that after three variable security issuances, UBIQ must obtain Typenex's consent for any further

variable security issuance. Thus, UBIQ was contractually obligated to obtain Typenex's consent for at least 15 variable security issuances made after the parties entered into the Purchase Agreement. UBIQ did not request consent for even one of the variable security issuances mentioned. Therefore, UBIQ is in breach of contract with Typenex, and Typenex has a substantial likelihood of succeeding on the merits of this claim.  The written consent requirement exists to prevent dilution of stock that would in turn hamstring UBIQ from repaying Typenex from a limited pool of resources.

Further, under the Note, UBIQ was required to make an installment payment July 26, 2015. UBIQ failed to make that payment. Accordingly, UBIQ is in breach of its obligations under the Note, which provides Typenex an additional strong basis for asserting likelihood of succeeding on the merits of its claims.

Based on these two issues, there is a substantial likelihood that Typenex will succeed on the merits of its underlying claims, and at a minimum, Typenex can present serious issues that demand further litigation and investigation. Consequently, this requirement for a preliminary injunction is satisfied and the Court should grant the requested relief.

## CONCLUSION

In sum, Typenex requests this Court's order granting a temporary restraining order and preliminary injunction in order to maintain the status quo and prevent UBIQ and Carmichael from further breaching their contractual obligations with Typenex while the parties arbitrate their dispute. As shown above, Typenex meets all the requirements for the issuance of a preliminary injunction and temporary restraining order. Accordingly, this Court should grant the requested

injunctive relief and the further order the parties to arbitrate the remainder of their dispute

without worry of further damage being done in the process.

      SIGNED and DATED: August 21, 2015

                                        PARR BROWN GEE & LOVELESS, P.C.

                                         /s/ James L. Ahlstrom
                                        Attorneys for Plaintiff

4835-2798-5703, v. 1